UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jason and Devon Shuster, | ) |
|     Plaintiffs, | )    2:16-cv-03315 JWS |
| vs. | )    **ORDER AND OPINION** |
| Stanford Jay Shuster, | )    [Re: Motions at Dockets 5 and 8] |
|     Defendant. | ) |

## I.  MOTIONS PRESENTED

At docket 5 defendant Stanford Jay Shuster ("Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), for an order dismissing the complaint of plaintiffs Jason and Devon Shuster ("Plaintiffs"), supported by a declaration from his counsel, Brian P. Worthington ("Worthington"), at docket 6, and his own declaration at docket 7.  At docket 8 Plaintiffs move to strike the motion and, alternatively, oppose it. At docket 9 Defendant opposes Plaintiffs' motion and replies in support of his motion, supported by a second declaration from himself at docket 11 and a second declaration from Worthington at docket 12.  At docket 10 Defendant objects to certain evidence Plaintiffs submitted in support of their filing at docket 8.[1]  Finally, at docket 13, Plaintiffs reply in support of their motion.

---

[1]Because the court does not rely on any of the evidence to which Defendant objects, Defendant's objections are overruled as moot.

Oral argument was requested but would not assist the court.

## II.  BACKGROUND

This case involves a series of disputes between Plaintiffs and Defendant. According to the complaint, plaintiff Jason Shuster ("Jason") and his father, Defendant, each owned 50% of three companies: Arthur Shuster, Inc. ("ASI"), Lodging Supply, Inc. ("LSI"), and Shuster Purchasing Solutions, LLC ("SPS") (collectively, "the Companies"). "In mid-2014, disagreements emerged between [Defendant] on one hand and [Plaintiffs] on the other regarding the control and direction of the Companies and the amount of money [Defendant] was taking out of the Companies."[2]  This led Jason and Defendant to execute a settlement agreement under which they terminated their co-ownership of the Companies ("Settlement Agreement"): Defendant sold his interest in SPS to Jason in exchange for Jason's interests in ASI and LSI.

The parties' current dispute centers around Plaintiffs' allegation that Defendant has failed to honor certain obligations under the Settlement Agreement.  Plaintiffs filed an action against Defendant in Arizona Superior Court involving four causes of action: (1) a declaration that the Settlement Agreement is enforceable and of the parties' rights and responsibilities thereunder; (2) breach of contract; (3) bad faith; and (4) specific performance.  Defendant removed the case to this court under 28 U.S.C. § 1441(b) and now moves to dismiss for lack of personal jurisdiction.

## III.  STANDARDS OF REVIEW

Plaintiffs' motion to strike is governed by Local Rule of Civil Procedure 7.2(m)(1), which states that a party may file a motion to strike "if the party seeks to strike any part of a filing on the ground that it is not authorized by statute, rule, or court order."

With regard to Defendant's motion, "[w]here a defendant moves to dismiss a complaint [pursuant to Rule 12(b)(2)] for lack of personal jurisdiction, the plaintiff bears

---

[2]Doc. 1-1 at 3 ¶ 12.

the burden of establishing that a court has personal jurisdiction over a defendant."[3] If, as here, the motion is based only upon written materials, rather than an evidentiary hearing, the plaintiff is required only to make a prima facie showing of personal jurisdiction.[4] Uncontroverted allegations in the complaint are taken as true, and conflicts between parties over statements contained in affidavits are resolved in favor of the plaintiff.[5]

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."[6] Arizona Rule of Civil Procedure 4.2(a) authorizes the exercise of jurisdiction to the extent permitted by federal due process requirements.[7] Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[8]

## IV. DISCUSSION

### A. Plaintiffs' Motion to Strike

Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The parties agree that Defendant failed to plead or otherwise defend by the October 6, 2016 deadline for doing so. Plaintiffs filed a default application the next day at 2:29 p.m.[9] But, at

---

[3] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[4] *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

[5] *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

[6] *Schwarzenegger*, 374 F.3d at 800.

[7] Ariz. R. Civ. P. 4.2(a).

[8] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

[9] Doc. 4.

4:43 p.m. later that same day, and before the clerk decided Plaintiffs' default application, Defendant filed the present motion to dismiss. In light of Defendant's motion, the clerk did not grant Plaintiffs' default application.

Plaintiffs now move to strike Defendant's motion, arguing that the clerk must enter Defendant's default even though he appeared and defended before the clerk ruled on their application. This argument is contrary to the plain language of Rule 55(a) and the case law interpreting it. Plaintiffs' motion will be denied.

Plaintiffs' argument founders where they contend Rule 55(a)'s "metric for failure is whether or not a party files a responsive pleading or evidences some intent to defend on or *before* the deadline to file an Answer."[10] This reads language into the rule that does not exist ("on or before the deadline to file an Answer") and ignores the word "has" that appears before "failed." Because "failed" is proceeded by the present-tense verb "has," Rule 55(a) describes a present failure, not one that happened in the past. Thus, the clerk must enter a defendant's default only where the defendant has not yet appeared and defended. Here, Defendant had clearly appeared and defended by the time the clerk reviewed Plaintiffs' default application. Under the circumstances, the clerk correctly refrained from entering his default.

Although it is relatively rare that a defendant will answer or otherwise defend in the narrow window between the filing of a default application and the clerk's decision on that application, this court addressed this exact scenario in *Cowen v. Aurora Loan Servs.*[11] The *Cowen* plaintiffs applied for entry of default on August 5, 2010. One day later, and before the clerk entered the defendant's default, the defendant filed a motion to dismiss. Because the defendant's motion "constitute[d] otherwise defending an action" under Rule 55(a), the court held that "[e]ntry of default [was] not appropriate."[12]

---

[10] Doc. 13 at 4 (emphasis in original).

[11] No. CIV 10-452-TUC-CKJ, 2010 WL 3342196 (D. Ariz. Aug. 25, 2010).

[12] *Id.* at *1.

Other courts are in accord.[13]  These decisions are consistent with Rule 55(a), Rule 1,[14] and "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."[15]

The one case Plaintiffs cite in support of their argument, *McManus v. Am. States Ins. Co.*,[16] is factually distinguishable.  In *McManus*, the court could not determine whether the clerk granted the plaintiff's application for entry of default before or after the defendant filed its answer.[17]  Given this missing information, the court constructively "deem[ed] the default to have been entered" when the application was received and lodged by the clerk.[18]  And, because this event happened before the defendant filed its answer, the court held that the clerk's entry of default was appropriate.  Here, in contrast, there is no dispute that Defendant appeared and defended before the clerk entered his default.  *McManus* is inapposite.

---

[13]*See Wofford v. Bracks*, No. CV 15-1052-GW (SP), 2015 WL 10793981, at *1 (C.D. Cal. Aug. 13, 2015) ("[D]efault may not be entered once a defendant has answered."); *SHFL Entm't, Inc. v. Digideal Corp.*, No. 2:12-CV-01782-GMN, 2013 WL 1944885, at *2 (D. Nev. May 9, 2013) ("[A] clerk's entry of default is void ab initio if the purported defaulting party actually appeared in the action.") (citation omitted); *Anderson v. Kohl's Dep't Stores, Inc.*, No. 4:09-CV-283, 2010 WL 148401, at *2 (E.D. Tex. Jan. 12, 2010) ("As a general rule, the clerk of court should not make an entry of default if the defendant has answered, filed a motion to dismiss, or taken some action to otherwise defend.  Here, Kohls filed an answer before the default was entered.") (citation omitted); *Hudson v. State of N.C.*, 158 F.R.D. 78, 80 (E.D.N.C. 1994) ("At the time the Plaintiff moved for default judgment, Defendants were no longer in default.  Their filing, however late, cured their default and thereafter entry of default would not be appropriate.").

[14]Fed. R. Civ. P. 1 (the Civil Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

[15]*Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

[16]201 F.R.D. 493 (C.D. Cal. 2000).

[17]*Id.* at 499 ("[I]t is possible that the Clerk [entered the defendant's default] prior to 3:53 p.m., when the Answer was filed.  It is also possible that the Clerk completed this work just after ASI's Answer was filed.  The exact chain of events cannot be determined.").

[18]*Id.*

### B. Specific Personal Jurisdiction Exists

As stated above, jurisdiction exists here to the extent allowed under federal due process jurisprudence. Due process allows the exercise of both general and specific personal jurisdiction. The broader of the two, general personal jurisdiction, "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts."[19] "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic."[20] Plaintiffs here only contend that specific jurisdiction exists.

The Ninth Circuit applies a three-prong test for determining whether specific personal jurisdiction exists, under which courts ascertain whether: (1) the non-resident defendant either "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof," or "perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction comports "with fair play and substantial justice, i.e. it [is] reasonable."[21] "The plaintiff bears the burden of satisfying the first two prongs of the test."[22] "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the

---

[19]*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

[20]*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

[21]*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

[22]*Schwarzenegger*, 374 F.3d at 802.

defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."[23]

### 1. Defendant purposefully availed himself of the privilege of doing business in Arizona

The first prong of the specific personal jurisdiction test includes two components: purposeful availment and purposeful direction.[24]  "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."[25]  Because Plaintiffs' suit sounds in contract, the court will conduct a purposeful availment analysis.

Under the purposeful availment test, one contract for the sale of one item does not establish minimum contacts in the plaintiff's home forum.[26]  Instead, the defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."[27]  For example, where the defendant "has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there."[28]

"[P]arties who 'reach out beyond one state and create continuing relationships and

---

[23]*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

[24]*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (the first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof.").

[25]*Schwarzenegger*, 374 F.3d at 802 (citations omitted).  *See also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[W]e have typically analyzed cases that sound primarily in contract . . . under a 'purposeful availment' standard."); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (analyzing purposeful availment for both tort and contract claims because all claims arose out of a contractual relationship).

[26]*Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *Boschetto*, 539 F.3d at 1017.

[27]*Picot*, 780 F.3d at 1212.

[28]*Burger King*, 471 U.S. at 475–76 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 648 (1950)).

obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[29]

Plaintiffs here are Arizona residents. They contend that, under the Settlement Agreement, Defendant reached out beyond his home state to create seven continuing obligations in Arizona,[30] including the obligation to indemnify Jason for all "existing and future liabilities relating to ASI and LSI."[31] Defendant does not specifically address any of Plaintiffs' contentions in reply. Instead, he asserts generally that (1) the Settlement Agreement does not require him to perform any acts in Arizona[32] and (2) he did not affirmatively reach into Arizona because Plaintiffs "brought the activities of the three companies to Arizona, not [Defendant]."[33] This latter argument misses the mark because the pertinent question is not why are Plaintiffs in Arizona; it is whether Defendant purposefully created a continuing obligation there.

As to that question, *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.* is illustrative.[34] The defendant there was a Canadian insurer that issued no policies in Montana and had no physical presence there.[35] But, because it contracted to indemnify

---

[29] *Id.* (quoting *Travelers Health Assn.*, 339 U.S. at 647). *See also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("We have held that the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents.").

[30] Doc. 8 at 6.

[31] Doc. 8-6 at 4.

[32] Doc. 9 at 7.

[33] *Id.* at 8.

[34] 907 F.2d 911 (9th Cir. 1990).

[35] *Id.* at 912.

and defend claims arising in Montana, the Ninth Circuit held that minimum contacts existed in that forum.[36]

Here, Defendant contracted to indemnify an Arizona resident for personal liability related to ASI and LSI. Thus, contrary to Defendant's assertions, the Settlement Agreement calls for performance in Arizona because that is where Defendant must pay Jason under the indemnification clause. And Defendant could reasonably anticipate that a dispute would arise between himself and Jason that would bring him to court in Arizona. In sum, Defendant's ongoing obligation to indemnify an Arizona resident is sufficient to establish minimum contacts in that forum.

### 2. Plaintiffs' claims arise from Defendant's forum-related activities

The second prong of the specific personal jurisdiction test—whether the claim arises out of or relates to the defendant's forum-related contacts—is satisfied if, "'but for' those contacts, the cause would not have arisen."[37] But for Defendant's alleged breach of his promise to indemnify Jason for liabilities related to ASI and LSI, Plaintiffs' relevant causes of action would not have arisen.[38] The second prong is satisfied.

### 3. Defendant has not presented a compelling case that the exercise of jurisdiction would be unreasonable

When determining whether the exercise of personal jurisdiction comports with "fair play and substantial justice," the Ninth Circuit instructs courts to consider the following seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to

---

[36]*Id.* at 914.

[37]*Id.*

[38]There is no need to analyze whether Plaintiffs' remaining claims satisfy the second prong because, at minimum, pendent jurisdiction exists over those claims because they arise out of the same common nucleus of operative facts. *See Picot*, 780 F.3d at 1211.

the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.[39]

Defendant waived any arguments with regard to factors two through seven by not including them in his opening brief.[40] With regard to factor one, Defendant essentially repeats his first prong argument that "the only connection [he] has to Arizona is that the Plaintiffs suing him live there."[41] Again, this ignores Plaintiffs' allegation that Defendant voluntarily contracted to indemnify Jason, an Arizona resident, on an ongoing basis. Under the circumstances, Defendant has not presented a compelling argument that the exercise of jurisdiction would be unreasonable.

## V.  CONCLUSION

Based on the preceding discussion, Defendant's motion at docket 5 is DENIED, and Plaintiffs' motion at docket 8 is DENIED.

DATED this 1st day of January 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[39] *Dole Food Co.*, 303 F.3d at 1114.

[40] Doc. 5 at 12–14. *See U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("[A]rguments not raised by a party in its opening brief are deemed waived."). Even if the court were to consider the arguments Defendant raised for the first time in his reply brief, Defendant does not present a compelling case that the exercise of jurisdiction would be unreasonable. *See* doc. 9 at 11–12.

[41] Doc. 5 at 13.