# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jason and Devon Shuster,<br><br>    **Plaintiffs,**<br><br>  **vs.**<br><br>Stanford Jay Shuster,<br><br>    **Defendant.** | 2:16-cv-03315 JWS<br><br>**ORDER AND OPINION**<br><br>**[Re: Motions at Dockets 31, 36 & 39]** |

## I.  MOTIONS PRESENTED

At docket 31 plaintiffs Jason and Devon Shuster ("Plaintiffs") move to compel defendant Stanford Jay Shuster ("Defendant") to respond to their discovery requests. Plaintiffs filed a notice of errata at docket 32. Defendant did not respond to the motion to compel. At docket 36 Plaintiffs filed a motion for the court to rule on the motion at docket 31. At docket 38 Defendant filed a motion for an extension of time to respond to Plaintiffs' motion to compel. Thereafter, at docket 39, Defendant filed a motion for an even larger extension of time. As a result, the court denied the motion at docket 38 as moot. At docket 41 Plaintiffs responded to the motion at docket 39. Defendant did not file a reply. At docket 42 Defendant filed an untimely response to the motion to compel before there was a ruling on the motion at docket 39. Plaintiffs filed a reply at docket 43. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

This case presents a dispute regarding whether Defendant breached certain obligations he owed his son, plaintiff Jason Shuster ("Jason"), under a Settlement Agreement they allegedly executed on October 17, 2014.  Under the alleged Agreement, Defendant sold his 50% interest in Shuster Purchasing Solutions, LLC ("SPS") to Jason in exchange for Jason's 50% interest in Arthur Shuster, Inc. ("ASI") and Lodging Supply, Inc. ("LSI").  Plaintiffs' complaint asserts claims for declaratory relief, breach of contract, bad faith, and specific performance.

## III.  STANDARDS OF REVIEW

Rule 26(b)(1) provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Information within this scope of discovery need not be admissible in evidence to be discoverable."[1]

If a party fails to make disclosures or cooperate in discovery, the requesting party may move to compel.[2]  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."[3]  "Broad discretion is vested in the trial court to permit or deny discovery[.]"[4]

If a party files a motion for an extension of time after the time has expired, as Defendant has done here, the court may extend the time only for "good cause" where

---

[1]Fed. R. Civ. P. 26(b)(1).

[2]Fed. R. Civ. P. 37(a)(1).

[3]*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

[4]*Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

the party's failure was due to "excusable neglect."[5]  Although "good cause" and "excusable neglect" are stated as separate requirements, a showing of excusable neglect also satisfies the good cause standard.[6]  "[Rule 6(b)(1)], like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'"[7]  The decision to grant or deny a Rule 6(b)(1) motion is committed to the district court's discretion.[8]

## IV.  DISCUSSION

**A.    Defendant's Motion for an Extension of Time**

"Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[9]  To make the equitable determination whether neglect is excusable for purposes of Rule 6(b), courts should consider the four factors set out by the Supreme Court in *Pioneer*.[10]  These factors are: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its

---

[5]Fed. R. Civ. P. 6(b)(1)(B).

[6]*California Trout v. F.E.R.C.*, 572 F.3d 1003, 1027 n.1 (9th Cir. 2009) (Gould, J., dissenting) ("Even when the extension is sought after the time limit has expired, the good cause standard is satisfied merely upon a showing of excusable neglect.").

[7]*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir. 2010) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir.1983)).

[8]*Id.* at 1258.

[9]*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

[10]*Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 n.4 (9th Cir. 1996) (citing *Pioneer*, 507 U.S. at 395).

potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith."[11]

As Plaintiffs observe, Defendant's motion addresses none of these factors. Nevertheless, the court finds that all four factors favor granting the motion. Defendant's original deadline for opposing Plaintiffs' motion to compel was June 15. His motion seeks an extension of time to July 17—a delay of 32 days—because he replaced his attorneys in the interim. According to Defendant, his new counsel needed the extension in order to adequately "prepare and file an appropriate response."[12] The court finds that this explanation is reasonable, there is no evidence of bad faith, and the delay should not prejudice Plaintiffs or negatively impact this action.

Plaintiffs point out that they need Defendant's discovery responses in order to prepare for Defendant's deposition and to decide whether to retain expert witnesses. This may be true, but the court is confident that counsel will be able to work together to ensure that Defendant's requested extension will not prejudice Plaintiffs or unduly prolong this case. Defendant's motion for an extension of time will be granted and his response at docket 42 will be deemed timely submitted nunc pro tunc.

**B.    Plaintiffs' Motion to Compel**

Plaintiffs served 13 interrogatories and 7 requests for production of documents ("RFPs") on Defendant. The present dispute concerns Defendant's responses to RFPs 1–6 and interrogatories 2–6, 8–9, and 13.

**1.    RFPs 1–4**

RFP 1 seeks documents that relate to or evidence "any communications regarding the Settlement Agreement, drafts of the Settlement Agreement, or

---

[11]*Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395).

[12]Doc. 39 at 1.

-4-

negotiations related to settlement."[13]  Subject to several objections, Defendant responded by stating that he would "produce all responsive, non-privileged documents in his possession, custody or control."[14]  Plaintiffs assert that Defendant has only produced 4 emails responsive to this RFP, even though dozens of responsive e-mails exist.[15]

RFP 2 seeks documents "evidencing any actions taken or decisions made by Jason and/or Devon on behalf of ASI or LSI, or any involvement Jason and/or Devon have had in the management or operation of ASI or LSI since October 17, 2014."[16] RFP 3 seeks documents "evidencing any requests or attempts by Stanford to have any role in the management or operation of SPS following October 17, 2014."[17]  And RFP 4 seeks documents that Defendant believes evidence "the invalidity or ineffectiveness of the Settlement Agreement."[18]  Plaintiffs assert that Defendant has produced no documents responsive to these requests despite Defendant's statement that he would.

Defendant does not specifically refute Plaintiffs' contention that he has failed to produce documents responsive to these RFPs.  Instead, he boasts of producing "over 2,000 pages" of unspecified documents and states that he "is compiling in excess of 300 pages of documents to fulfill his discovery requirements."[19]  With regard to this latter statement, Plaintiffs reply that Defendant has produced one supplemental set of documents, totaling 165 pages, that contain "(1) approximately 100 pages of e-mails

---

[13]Doc. 31-1 at 29.

[14]*Id.* at 61.

[15]Doc. 32-1 at 2.

[16]Doc. 31-1 at 30.

[17]*Id.*

[18]*Id.*

[19]Doc. 42 at 5.

and correspondence, largely identical to e-mails already produced by Jason; and (2) ASI's 2011 tax return."[20]  Plaintiffs also note that Defendant did not indicate the request or requests to which the documents respond.[21]

Rule 34(b)(2)(E) sets out the procedures a party must follow when producing documents in response to an RFP.  Of particular relevance here, it states that if the party is not producing documents "as they are kept in the usual course of business," he or she "must organize and label them to correspond to the categories in the request."[22] This requirement exists to prevent a party from doing what Defendant has done here: the proverbial unorganized "document dump."[23]  Although it appears that some of the documents Defendant produced may be responsive to one or more of Plaintiffs' requests, neither Plaintiffs nor the court can discern exactly which documents go to which requests because Defendant has not organized and labeled his production. Defendant will be ordered to remedy this problem and then respond fully to Plaintiffs' RFPs.

## 2.    RFPs 5–6

Together, RFPs 5 and 6 seek ASI's and LSI's bank account statements, financial statements, tax returns, and loan documents that have been generated since the date of the alleged Settlement Agreement.[24]  Defendant refuses to produce documents responsive to these requests, citing relevancy and confidentiality objections.  These objections lack merit and are overruled.  The requested documents concern a matter

---

[20]Doc. 43 at 3.

[21]*Id.*

[22]Fed. R. Civ. P. 34(b)(2)(E)(i).

[23]*See F.D.I.C. v. Appleton*, No. CV 11-476, 2012 WL 10245383, at *3 (C.D. Cal. Nov. 29, 2012); 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2213 (3d ed. 2017).

[24]Doc. 31-1 at 30.

that is relevant to Plaintiff's claims: whether Defendant acted as the sole owner of ASI and LSI after the alleged Settlement Agreement was executed.  If so, that would tend to show that Defendant treated the Settlement Agreement as an enforceable contract.

With regard to confidentially, Defendant asserts without any evidentiary support that the requested financial information "could be used to gain competitive information about ASI, including information regarding its customers, the management of the company, and possible trade secret information."[25]  Defendant does not provide the court with copies of the documents in dispute, does not describe the content of any such document with specificity, or explain how that content could be misused by Plaintiffs in the manner he describes.  Defendant's vague, unsupported assertion does not satisfy his burden of proving that he should not be required to produce the requested documents.  The court will grant Plaintiffs' motion to compel with regard to these RFPs.[26]

### 3.      Interrogatory 2

Interrogatory 2 asks Defendant to identify all communications between himself and Plaintiffs regarding the Settlement Agreement.  Subject to various objections, Defendant responded with a rambling, largely non-responsive narrative.[27]  After Plaintiffs filed the present motion to compel, Defendant supplemented his answer by asserting that he had "multiple conversations" with his attorneys about the proposed agreement.[28]  The court finds that Defendant's answer and supplemental answer to this interrogatory are evasive at best, and will therefore treat Defendant's responses as a

---

[25]Doc. 42 at 6.

[26]If Defendant continues to insist that the requested documents are confidential, the court is confident that the parties can agree on a protective order that assuages Defendant's concerns.

[27]Doc. 31-1 at 34–36.

[28]Doc. 43-1 at 5.

failure to answer.[29]  Defendant will be ordered to again supplement his answer to provide a complete, non-evasive response to the question asked.

### 4. Interrogatories 3–4.

Interrogatories 3 and 4 ask Defendant to describe: (3) "all actions" he took or attempted to take on behalf of SPS since October 17, 2014; and (4) "all actions" Plaintiffs took or attempted to take on behalf of ASI and SLI since October 17, 2014.[30] The court agrees with Defendant that "all actions" is vague and ambiguous. Nevertheless, Defendant responded to these two interrogatories by identifying various "actions" that the parties took on behalf of the respective companies.  Plaintiffs have identified no basis for concluding that Defendant's responses are incomplete or evasive.

### 5. Interrogatory 5.

Interrogatory 5 asks Defendant to describe each time he communicated to Plaintiffs his belief that the alleged Settlement Agreement is unenforceable.  Subject to various objections, Defendant responded by stating that he "knows that there were such communications" but does "not know the specifics of those communications."[31]  This answer is incomplete and evasive.  Defendant will be ordered to supplement his answer to provide a complete, non-evasive response to the question asked.

### 6. Interrogatory 6.

Interrogatory 6 asks Defendant to describe his basis for failing "to indemnify Jason for the debts of LSI and ASI."[32]  Subject to various objections, Defendant responded by disagreeing with the premise of the question ("Responding Party *has* indemnified Jason for debts of ASI and LSI"), identifying several instances where,

---

[29]Fed. R. Civ. P. 37(a)(4).

[30]Doc. 31-1 at 20–21.

[31]*Id.* at 38.

[32]*Id.* at 39.

according to him, he indemnified Jason, and asserting that he has no legal obligation to indemnify Jason.[33]  Plaintiffs contend that this response is "non-responsive and wildly inaccurate."[34]  The court disagrees with Plaintiffs' first argument; Defendant's answer is responsive.  And Plaintiffs' second argument amounts to a mere factual disagreement, not grounds to compel a supplemental response.

**7.      Interrogatories 8–9.**

Interrogatory 8 asks Defendant to "[i]dentify by customer, date of contract and amount of contract, each and every job that has been awarded to ASI and/or LSI since October 17, 2014"; and Interrogatory 9 asks Defendant to "[i]dentify all loans ASI and/or LSI have taken out or have modified since October 17, 2014, and for each identify each and every individual you disclosed as an owner of ASI and/or LSI to the lender."[35]  Defendant refused to respond to these interrogatories, citing confidentiality concerns and raising relevancy objections.  Plaintiffs respond that ASI's and LSI's post-agreement contracts and loans are relevant to this matter because, if Defendant entered into such contracts and loans without Jason's approval, that would tend to prove that Defendant considered himself to be the sole owner of ASI and LSI.  The court finds this argument persuasive; Defendant's relevancy objection is overruled.  Further, Defendant's confidentiality concerns are not an insurmountable barrier to discovery; the court is confident that a protective order can be drafted that assuages those concerns.

**8.      Interrogatory 13**.

Interrogatory 13 asks Defendant to "[i]dentify any communications [he has] had with anyone since October 17, 2014 in which [he] represented that Jason and/or Devon

---

[33]*Id.* at 39–40.

[34]Doc. 32-1 at 10.

[35]Doc. 31-1 at 40–41.

[was] still an owner of either ASI or LSI."[36]  Defendant's response: "Responding Party has represented this a great many times to many people.  There are too many instances for Responding Party to be able to recollect any with any detail."[37]  Plaintiffs object to this response because it "defies all logic and common sense."[38]  This objection is overruled.  Without addressing whether it is logical or plausible that an event can become harder to remember the more frequently it occurs, that is how Defendant chose to respond to the interrogatory.  The Civil Rules require parties to provide complete, non-evasive answers to interrogatories; the answers need not be logical or sensible.

## C.    Expenses

Rule 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part the court may apportion the reasonable expenses for the motion.  An award of expenses is not appropriate, however, if: "(1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of fees unjust."[39]  None of these situations exists with respect to Plaintiffs' successful challenges.  Fees should be apportioned.

Plaintiffs sought supplemental responses to 6 RFPs and 8 interrogatories.  Their motion will be granted as to all 6 RFPs and 4 interrogatories, and the court finds that Defendant's position was not substantially justified with regard to these deficient discovery responses.  On the whole, Plaintiffs prevailed on most of their challenges, and the court finds that Defendant necessitated the motion by taking such

---

[36]*Id.* at 56.

[37]*Id.*

[38]Doc. 32-1 at 12.

[39]Rule 37(a)(5)(A).

unreasonable positions.  The Court in its discretion will award Plaintiffs 70% of their reasonable expenses.

## V.  CONCLUSION

Based on the preceding discussion, Defendant's motion at docket 39 is GRANTED; Plaintiffs' motion at docket 36 is DENIED as moot; and Plaintiffs' motion at docket 31 is GRANTED IN PART and DENIED IN PART as follows: within 14 days of the date of this order Defendant must supplement his responses to RFPs 1–6 and interrogatories 2, 5, 8, and 9.  If the parties cannot stipulate to the amount of expenses that Defendant must pay Plaintiffs, then within 14 days from the date of this order Plaintiffs shall file a properly supported motion for 70% of their reasonable expenses, and Defendant shall respond within 7 days after the motion is filed.  No reply may be filed unless requested by the court.

DATED this 16th day of August 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT